Robert Karakop. I'm here for the petitioner, Mr. Clark. Your Honors, this case arises out of a denial of an anti-SLAPP motion decided under California law. And the issues that we've raised in our brief point to substantive and significant deficiencies in the opposition to our anti-SLAPP motion by Anheuser-Busch. Notably, initially, is the absence of any admissible evidence of a trade secret. There were plenty of opportunities for Anheuser-Busch to do so, and it failed to do so. And instead of submitting evidence of the trade secret, what it chose to do was rely on inadmissible double hearsay of an employee of its, Kristi Skinner. And that declaration attempts to describe the content of this page 13, this document that this is this alleged trade secret. What other evidence besides that, a declaration of that sort, would you have expected them to put in? I would have expected them to submit under seal a copy of the document itself. And there are procedures under the California Uniform Trade Secrets Act. And under the Eastern District local rules, it would have permitted that to happen and to keep the secrecy and privacy of that document intact. And I think that that's the only way that Anheuser-Busch needs it. Why is that necessary? Your client obviously has the document, so you know what's in it. She describes, I think, in fairly significant detail what's in it and why it's been so critical to the company's operations. I don't understand why that's not an acceptable form of proof. Understood, Your Honor. And I think I understand the question in that context. As I look at it, though, I go back to the hearsay rule. I mean, aren't we talking about creating an exception to the hearsay rule? And that's where I can't get past, personally, on an intellectual level. Do we have case law that says in a trade secret action, you know, we're talking about, let's say, a document, that unless you produce the document itself, you've not satisfied your burden on that point? I do. I have two cases in particular, Your Honor. One of them is an unpublished California court of appeal decision. Don't bother with that one. What's the other one? Don't bother with that? No. I'm not going to look at that. What do you have in terms of published? The 11th Circuit Court of Appeals issued a decision that I cited on page 17 of my opening brief, the Pete, Inc. case, which specifically held that a declaration prepared at the request of counsel to describe a trade secret was comprised of, quote, classic hearsay and wasn't adequate in order to prove the existence of a trade secret. And that was the most direct case law I could find on point. The other issue, to address kind of the argument that I have seen from Anheuser-Busch, the argument that was proposed by the trial court judge in this order, is that Ms. Skinner, because she had personal knowledge of the content of this document, that that should be sufficient to establish the fact that it is a trade secret. Again, my concern with that is, don't we open up the possibility of an exceptionally broad, previously unenunciated exception to the hearsay rule, which simply says if you have personal knowledge of a hearsay statement, then it's admissible? In that case, wouldn't we all but eliminate the existence of the hearsay rule altogether? For example, I testify as a witness about what somebody else told me, but I have personal knowledge of that because I heard it. Well, this is a unique situation. It's not about people talking to each other. It's about the keeper of records. And so that's kind of a confined circumstance as opposed to opening it up to every conversation that may take place in the sphere of existence. Correct. And I actually looked for case law that would support A.B.'s position. I personally wasn't able to find something that specifically said, hey, in the context of a trade secret, because of the nature of what we're talking about, somebody who is a custodian of the record or has intimate personal knowledge of the document or trade secret can go ahead and testify in terms of a declaration for purposes of an antecedent. In analogous situations, we get testimony from or declarations from custodian of records all the time. They are not necessarily knowledgeable about each and every piece of information that went into those documents, but as caretaker of those documents, they attest to the fact that they are ordinarily and regularly kept and they're composed in a particular manner and they're safeguarded. So why is this so different? That's a good question. And I'm afraid I'm going to base this on my experience with California law as opposed to Federal law. So if I misstate something on that regard, it's when I think about this, for example, I know California has enacted civil procedure code sections that specifically authorize and allow for the introduction of evidence from a custodian of records to authenticate the records. And I don't know if Federal law has a similar provision. So I can't, I guess in this context procedurally, I can't answer that question under Federal law. Right. But why isn't this analogous to that? It's not exactly the same. But why isn't this close enough to assuage any hearsay concerns? I think it actually goes to the original call of your question as I understood it, which is, is the custodian of record actually just authenticating that these are genuine documents that are being introduced into evidence? Or is the custodian of record providing testimony, his or herself, about the content of those documents? I guess that's where I see the distinction. And, again, to the extent I'm working from California law, it may be different in the Federal courts. You know, page 13, we talk about this document. Could I just interject one other thought? Yes. This is not the trial of the matter. This is just for the purposes of determining whether or not Anheuser-Busch had a reasonable possibility or probability of prevailing. So we're not at the point where we're admitting evidence and declining to admit evidence. So in that context, why is this impermissible? Well, I think given the concerns, it sounds like we're starting to go into that argument of planned parenthood. Given the concerns about the anti-SLAPP action itself, the California law requires that the plaintiff, in bringing an action and defending against an anti-SLAPP statute, actually provide in its burden is to show to the court some admissible evidence that demonstrates that it has a prima facie case, and in this case a case for misappropriation of trade secrets, for example. And one of the essential elements of that case is the actual existence of a trade secret, which is why I'm spending so much time focusing on whether or not this trade sufficient for purposes of defeating the anti-SLAPP action. And in that regard, I think it goes right into my next point as well, which is about whether or not Anheuser-Busch sufficiently protected the secrecy of this document, page 13. It submitted evidence of the fact that it has tight controls over the electronic distribution of page 13, but the record has unrefuted evidence of the fact that this document is posted on bulletin boards throughout its facility that were readily and easily available to thousands of third parties, visitors, guests every year. And there was no — there's no evidence that Anheuser-Busch proffered that disputes that testimony. So I think in that sense, even if page 13, even if Ms. Skinner's declaration was sufficient to establish the existence of a trade secret, the fact that this document in printed form is — is hanging all over its facility and is accessible readily to anyone who may just walk by and pluck it off a bulletin board demonstrates that there isn't an adequate effort to maintain the secrecy of the document in the first place. Ergo, it should not be given trade secret protection. The last issue with respect to the — I think it comes from a combination of both the anti-SLAPP statutes. First and foremost, it indicates that a plaintiff's burden is to establish the legal probability of the fact that it has a chance of prevailing on the claim. First and foremost. And then second, under the California — But that doesn't — that doesn't address the specific requirement to establish a trade secret. And my question specifically was what — why would the plaintiff have to show the actual content of the trade secret as opposed to the existence of a trade secret? And I think that that's answered by the California Uniform Trade Secrets Act, California Civil Code Section 3426.1, that expressly lays out the existence of a trade secret as an element of the claim of misappropriation. The contents of that trade — of that secret. That's what you were saying. That's what you were objecting to, the fact that the declaration talks about the contents of the secret, but the existence of the secret is the required element. And that's a great question. I see where you're going, the distinction, which is how do you prove the existence of a trade secret without actually showing the trade secret itself? Are you required to actually prove the contents of the trade secret in order to state a cause of act or to prevail? I think the answer is absolutely yes. Okay. Well, so give me the case authority. Right. To support your — can I finish my question? Sorry. The case authority to support your proposition that the actual content of the trade secret must be established. P. Inc. v. Vanguard Research. What's your — what's the citation? 378-F3D-1154 at 1160. That's the — Is that my circuit? That's the Eleventh Circuit. Well, give me something that's precedent. Let's see if I can find something directly on point, Your Honor. Do you have anything from California? Yes. Cases cited within the unpublished opinion include — Oh. Yeah. These are published cases. Okay. So what case are you telling me? A case that's cited within an unpublished opinion? Yes. These are both published opinions. Okay. Tell me. McGarry. McGarry. It's 154-Cal-Ap-4th-97 at 108. And Sgt. Fletcher, Inc. v. Able Corp. 110-Cal-Ap-4th-1658 at 1665. And so if I read those cases, they will say that the actual content of the trade secret is an element of proving up a violation of trade secrets. I wish I could say that, but I can't say that conclusively. Well, that's what I asked you for. I know. I had a string cite in here from the case that said that conclusively. That's the danger with string cites. Yes. You are absolutely correct. I don't want to misstate anything before the justices. All right. The last issue I wanted to address is the fact that there's no evidence of damages that was presented by Anheuser-Busch in this case. And it goes to both claims. Both claims require as an element damage to be actually suffered. And there was the original anti-SLAPP motion filed by us in 2013, and the secondary renewed anti-SLAPP action filed in 2016. In the original action, there was a declaration stating that the attorney's fees incurred in the related class action and the attorney's fees in this action were damages. But that evidence was specifically and intentionally omitted in this 2016 motion. In fact, as I cited in my reply brief, the Respondent went so or Appelli went so far as to specifically expressly forswear any reliance on the attorney's fees incurred in the class action as damages in this case. So I think as to both claims here, the breach of contract and misappropriation of trade secrets, there was no evidence submitted in opposing this motion. And there was an express waiver of the actual damage issue. I don't think the damages incurred in this case would or attorney's fees incurred in this case would constitute damages in any event. Roberts, just one quick question. Where did that express waiver occur? What was the context for that? My reply, it's on page 6. It cites Appelli's further excerpts of record, page 1, note 5. Okay. Got it. Okay. Thank you. Thank you. And, Your Honors, I'd like to reserve my last two minutes for reply. Certainly. Mr. Appelli. Good morning, Your Honors. May it please the Court. My name is Mark Topel, and I represent, along with my co-counsel Lynn Ager, who is at counsel table, Anheuser-Busch. Very, very briefly, and I will not be absent your questions, to be taking my entire allotted time, is. I'm sorry? You said what now? I said I will not be taking my entire allotted time absent questions. Oh, okay. Let me speak up. I don't know if I'm too far away. I just didn't hear you. Well, I'm going to come right here, because I'll make my points loud and clear. We have to focus on where the status, procedural status of this case is. We're deciding whether or not we have provided adequate evidentiary materials to see whether we can proceed with the case in the face of a slap motion. So we're on what's commonly called prong two, which is our duty to show that we have legally cognizable, and I use that term because the cases are a little vague about what can go into that basket, but it has to be credible evidence. So we have submitted to, for instance, meet the elements that we have to show for theft of a trade secret. Let me ask you about the Skinner Declaration. Sure. I mean, I think I had been at a different memory of how detailed it was than when I looked at it again. It's actually pretty bare bones. Why is that adequate to establish that element? Well, it establishes that there are the recipes for the various malt liquor beers. I don't even think it establishes that. That's why I wanted to look at it again. It establishes it contains that. I have the ‑‑ I mean, I'll just read you the one sentence of any substance. It says, It contains a wide range of confidential information related to Anheuser-Busch's brewing processes, including but not limited to information regarding a variety of characteristics for each of Anheuser-Busch's products. That's really the sum and substance of what she says in terms of describing what's in the thing. She then goes on to explain why it's so critical to the company's operations. I grant you that. But in terms of your opponent's objection that you really haven't given the district court enough to even flesh out the substance of what's in this document, why is he not right about that? Because I think that it's perfectly adequate. It's not hearsay. And it does describe, and she does say, that it is discussing the analyses and components of the brewing recipes for the malt liquors. She doesn't have to lay them out. This is like the recipe for. Just a minute. Why don't you back up one step? First of all, what do you have to show in this regard on this motion? All we have to show is that we have credible evidence that would allow us to go forward to a jury. Credible evidence of what? That there was a trade secret that was stolen or misappropriated. That you have a trade secret that the plaintiff misused. So I think Judge Rockford's question is, does this, I guess it's paragraph three of the declaration, is this sufficient to show that you have a trade secret? How does this show that it's a trade secret? Well, that she is describing that she is the, I guess, for lack of a better word, the custodian of record, as well as the person who is familiar with it, that this contains information related to Anheuser-Busch's brewing processes, including but not limited to information regarding the variety of characteristics for each of Anheuser-Busch's products. Anheuser-Busch has used this, and she goes on to describe how it's used. It's absolutely critical. It is to be kept secret, and that access is limited. And I submit to this Court that you don't have to, when you're providing the recipe to the brewers, which is what, how this is used, that you have to lay that out for the Court or the opponent. And as you pointed out, of course, they stole it, so they had it, so they know it. They absolutely know what was in it and, in fact, gave it to the consumer class action people who then, one of them, I guess, lost their nerve and returned it to us when we demanded it, which basically is the basis. So I take serious dispute with the idea that the very essence of the trade secret is you want to prevent it from wider dissemination than you can at all, that you have to put in detailed, more detailed information about the document than saying that it talks about what each beer analysis and, I don't know how to say it, I'm not a chemist, but I do drink a lot of beer. It does describe. Well, speaking of drinking a lot of beer, you know, home brewing is a great big hobby now. I'm sure you can go on the Internet and, you know, get a hundred recipes for beer. But they didn't do it, and maybe those... Well, just a minute, let me finish my question. Sure, sir. So what makes this, I guess it's a recipe, a trade secret? How do we know that, you know, it's not the same thing as some recipe on the Internet? Because they're telling you that they're keeping it under wraps in a special computer-protected program that only various people have access to it. I don't know what else one would do to say people on the Internet who put their home remedies or grandpa's beer remedy out probably don't do that, and there's no reason why they couldn't try to do it and maybe achieve the status. This is a highly confidential, protected brewing document. So I don't see that their argument to me, their argument is basically bordering, in fact, on not frivolous but certainly not with a lot of legal authority in their argument. Their second argument that it's hearsay is just nonsense. It's not. There are cases that talk about this, and, in fact, Ms. Skinner under 701 is absolutely properly qualified to have said what she said and for it to be cognizable. Are you familiar with, I think it was an 11th Circuit case that your opponent cited? Yes, and I am familiar with it, and it is inapposite at this procedural stage. That involved an attempt to put a document in at trial as opposed to here where we're talking about a very preliminary stage, whether we can go forward and even begin discovery in this case. So that's my main issue with that, and I am familiar with the case. I am not really familiar with the unpublished opinion, nor have I read the cases that were cited to the court from that string cite in the unpublished opinion. So I guess that's what I say to you, Judge, that this qualifies for the criterion that are set forth defining what makes a trade secret in the California Uniform Trade Secret Act definition. So I think that their argument in favor of overturning the district court, and the district court concluded the same. He discussed this at some length. Can I just ask out of curiosity, why is it called page 13? Is it one page of a multi-page document? I couldn't figure that out. I don't know. Is it just one page, or is it multiple pages? It's one page. It is one page. Okay. All right. That explains it. That I do know. Okay. That's fine. But I don't know why. They certainly didn't ask me. Can I ask you about the damages point? Yes, sir. So your opponent is right that the declarations that he referenced, I think they're pretty much identical except for the one paragraph talking about attorney's fees incurred as left out. Yes. He says that you all made a very deliberate and explicit waiver of any claim, I guess, in this action to recover those attorney's fees that were referenced in the 2013 declaration. Is that true? That's correct. It is correct. Okay. We're claiming other damages and other sources of damages to satisfy the damages requirement. Okay. So what we're saying is that this is an injunctive action. Well, hang on. Before we get to other . . . Okay. In terms of monetary relief, you are . . . What the district court here, if I remember correctly, did was it just took judicial notice, actually, of the 2013 declaration and said, oh, that's good enough because you all were talking about, you know, more than $75,000 in attorney's fees back then. Yes. It sounds like you have now . . . you're abandoning that as any basis for recovering monetary damages in the action as of today. Is that correct? I can't say that. I won't say that. But he says that you . . . Because we're at a very preliminary stage going forward. But he referenced a specific, I can't remember what it was, some document in which you all . . . Right. It was a declaration. Okay. So why . . . And I thought you said, yeah, that's true. He's right. Yes. That addressed a different issue that we were concerned about at the time having to do with the application of litigation privilege or the potential application of litigation privilege. Okay. Well, I'm just trying to figure out, and you can tell me if monetary damage ends up being irrelevant. But in terms of monetary damage, what actual proof did you put on on this second go-round? What actual proof did you put before the district court to show that you were entitled to recover some form of monetary relief? Is there nothing? The declaration of Ms. Skinner, I believe, or Meryl Lee, I can't remember her last name. Please pardon me. It talks about page 13 being worth more than $75,000. It's Skinner's. She says that. Yes. Yes. And that would be it for that point. But I want to stress to you . . . Well, okay, but the fact that it's worth $75,000, I mean, they didn't deprive you of it. Yeah, but they didn't deprive you of it. You still have it. Yes. So you have to put on evidence of damages that you've suffered by the fact that they've now disclosed it. And you . . . Well, we're relying, we are relying on the reputational damage and . . . Well, what evidence did you put on to support that? You can't just rely on the allegations in your complaint anymore. You've got to put on proof, some form of proof. Well, I assume that is, that will be the case. No. But you have to do it now, a probability, a reasonable probability of damages in an amount that meets the threshold. Yes, ma'am. I understand. We are relying on the injunctive relief, which does not require proof of monetary damages to proceed to whatever, you know, the next stage of the case. And in the contract section, a portion of this, damages are presumed. It's nominal damages, a contract violation. So the answer to your question is that we are not, we have not put on evidence of monetary damages. I think that the existence of the widespread publicity and multiple consumer class actions that were filed as a result of this caused a tremendous amount of jokes, primarily. So counsel, is it your position that at this stage of the proceedings, you're not required to, to establish a reasonable probability of recovering a particular amount of damages? Yes, certainly as our case. Just the existence of damages. I'm sorry. Just the existence of damages. Yes. Or, or maybe the need, just the need for injunctive relief. Yes. Yes. Is that sufficient? I think it is absolutely sufficient. Without monetary damages? Absolutely sufficient. And I don't think, let me just say, I think it's absolutely sufficient, nor do I think that in a case where a food product or a consumer, a large, well-known consumer product is basically defamed, fundamentally, that the necessity for injunctive relief becomes immediately apparent and urgent, which in this case it was. I mean, this was a huge assault on Budweiser beer, regardless of what you think about Budweiser beer, one way or the other. And I think that these sorts of issues are often far more, better dealt with when you can perfect the record and develop the record. So the answer to your question, both, all of you judges, is that we believe that certainly in a case where there was a clear theft, violation of the California Criminal Penal Code, and we've cited Penal Code 484 and 487 and 499C, that there would be no application of the litigation privilege and injunctive relief would more than suffice. All right. So I see I'm out of time. You are. Thank you. I didn't do that on purpose. All right. We helped you. We helped you a little. Thank you, counsel. You're welcome. Rebuttal. A couple of quick points I'd like to address. Justice Rawlinson, you asked me what authority applied with respect to the burden of Anheuser-Busch. I went back through my brief and I found something I think was more succinct. It's on page 15 of my opening brief, where I do cite the anti-SLAPP statute and the state's premier medical management systems, the California Insurance Guarantee Association, 136 CALAP 4464. And it states, quote, Plaintiff must demonstrate that the complaint is both legally sufficient and supported by prima facie showing of facts to sustain a favorable judgment. And that's exactly The question that I asked you specifically was case authority to support the proposition that the plaintiff in a trade secrets case must prove the content of the trade secrets as opposed to merely the existence of a trade secret, because that was the argument that you had made. That's fair. That's fair. And I think your point is well taken. Do they necessarily have to show the content of the trade secret? I don't think that they would have to, but they have to be able to produce admissible evidence of the existence of a trade secret, which is where I got to the argument that I made in this case originally, that they didn't do that here. The issue of damages versus injunctive relief was something that caught my attention. First of all, if damages are expressly force-worn, we probably have a diversity issue in this case, which hasn't come up until right now, because this is a diversity case. I don't think he force-worn damages. He just said at this juncture that showing the existence of damages without an amount and the need for injunctive relief met the burden at this juncture. And that's the last point I wanted to address here, injunctive relief. There has to be an immediate need for injunctive relief. We're five and a half years past the original filing date of this complaint. There's absolutely no evidence in the record that this document was disclosed by Mr. Clark to anyone other than in discussing the underlying class action with class counsel. Thank you, counsel. I see my time is up. Thank you, Your Honors. It is. Perfect, Andy. Thank you to both counsel. The case is submitted for decision by the Court. The final case on calendar for argument today is Interior Glass Systems v. United States.
judges: Tashima, Rawlinson, Watford